IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| YOUNGLOVE CONSTRUCTION, LLC, | : |
| Plaintiff, | : |
| vs. | : Case No. 3 : 2008 cv 01447 |
| | : Judge Carr |
| PSD DEVELOPMENT, LLC, et al., | : |
| Defendants. | : |

## ANSWER AND COUNTERCLAIM OF DEFENDANT PSD DEVELOPMENT, LLC

For its Answer to the Complaint of Plaintiff Younglove Construction, LLC ("Younglove"), Defendant PSD Development, LLC ("PSD") admits, denies and states as follows:

1. Admits that allegations of paragraph 1.

2. Admits that allegations of paragraph 2.

3. In response to the allegations of paragraph 3, PSD admits Ag Credit Agricultural Credit Association is a lender doing business in Ohio, states that the PRJ attached as Exhibit A to the Complaint speaks for itself, and states that the remaining allegations of paragraph 3 set forth conclusions of law to which no response is required.

4. In response to the allegations of paragraph 4, PSD admits that the Ohio Department of Job and Family Services is an agency of the State of Ohio, states that the PJR

attached as Exhibit A to the Complaint speaks for itself, and states that the remaining allegations set forth conclusions of law to which no response is required.

5. In response to the allegations of paragraph 5, PSD admits that Wyandot County Treasurer is an agency of Wyandot County, states that the PJR attached as Exhibit A to the Complaint speaks for itself, and states that the remaining allegations set forth conclusions of law to which no response is required.

6. In response to the allegations of paragraph 6, PSD states that the Complaint speaks for itself and that the remaining allegations set forth conclusions of law to which no response is required.

7. In response to the allegations of paragraph 7, PSD admits that this dispute involves citizens of different states and the amount in controversy exceeds $75,000, but states that the remaining allegations set forth conclusions of law to which no response is required. Answering further, PSD states that it does not contest the jurisdiction of this Court.

8. In response to the allegations of paragraph 8, PSD states that the allegations set forth conclusions of law to which no response is required. Answering further, PSD states that it does not contest venue in this Court.

9. In response to the allegations of paragraph 9, PSD admits it entered into a written contract with Younglove for the construction of Feed Manufacturing Plant to be located at 7148 State Highway 199, Upper Sandusky, Ohio (the "Project"), but denies that the entirety of the written contract is attached to the Complaint as Exhibit B. Answering further, PSD states that the terms of the contract speak for themselves.

10. In response to the allegations of paragraph 10, PSD admits that the contract provided that Younglove was to be the design/builder and PSD Development was to be the owner, and states that the terms of the contract speak for themselves.

11. In response to the allegations of paragraph 11, PSD admits that the base contract price was agreed to be $8,493,500.00 on a lump sum basis, and states that the contract documents speak for themselves.

12. In response to the allegations of paragraph 12, PSD admits the Project was substantially completed on time, but states that the construction of the Project was defective in many respects as set forth in PSD's Counterclaim below.

13. In response to the allegations of paragraph 13, PSD states that the terms of the contract speak for themselves.

14. In response to the allegations of paragraph 14, PSD admits that Younglove completed the Project on time, but states that the construction of the Project was defective in many respects as set forth in PSD's Counterclaim below.

15. Denies the allegations of paragraph 15.

16. In response to the allegations of paragraph 16, PSD admits it has not paid Younglove the full contract price for the Project. Answering further, PSD states that Younglove is continuing to do work on the Project in an effort to correct some of the numerous defects in the construction as more fully set forth in PSD's Counterclaim below.

17. Denies the allegations of paragraph 17.

18. In response to the allegations of paragraph 18, PSD admits that a copy of a Lien is attached to the Complaint as Exhibit C, states that the Lien speaks for itself, denies that a balance

is due Younglove on the Project, and denies the remaining allegations for lack of knowledge or information sufficient to form a belief as to their truth.

19. In response to the allegations of paragraph 19, PSD admits it is the owner of the real estate upon which the Project is located. Answering further, PSD states that the Amended Notice of Commencement speaks for itself, admits that a copy of the Lien affidavit was served on PSD, admits that the Sheriff's Affidavit of Service is attached as Exhibit E to the Complaint, and states that the Affidavit of Service speaks for itself.

20. In response to the allegations of paragraph 20, PSD admits that Ag Credit is a lending institution that has provided financing for the Project, admits that a copy of a certified mail receipt is attached as Exhibit F to the Complaint, states that the certified mail receipt speaks for itself, but denies the remaining allegations for want of knowledge or information sufficient to form a belief as to their truth.

21. States that the allegations of paragraph 21 set forth conclusions of law to which no response is required.

22. Denies the allegations of paragraph 22.

23. In response to the allegations of paragraph 23, PSD incorporates its admissions and denials in the previous paragraphs of this Answer as if fully rewritten herein.

24. In response to the allegations of paragraph 24, PSD denies that Younglove has met all of its obligations under the contract, states that Younglove's work on the Project was defective in many respects, and admits the remaining allegations of paragraph 24.

25. In response to the allegations of paragraph 25, PSD admits that it is using the facility to manufacture feed and its associated products, but denies the remaining allegations of paragraph 25.

26. In response to the allegations of paragraph 26, PSD admits that there are unresolved issues pertaining to concrete as well as several other issues with respect to Younglove's defective design and construction, but denies the remaining allegations of paragraph 26.

27. In response to the allegations of paragraph 27, PSD admits that it is using the facility for it intended purpose, denies that it owes any additional payment to Younglove due to Younglove's numerous breaches of the contract and its defective construction, and denies the remaining allegations of paragraph 27.

28. Denies the allegations of paragraph 28.

29. In response to the allegations of paragraph 29, PSD incorporates its admissions and denials in the previous paragraphs of this Answer as if fully rewritten herein.

30. In response to the allegations of paragraph 30, PSD states that there is a valid Contract between PSD and Younglove. Answering further, PSD denies the remaining allegations of paragraph 30.

31. Denies the allegations of paragraph 31.

32. In response to the allegations of paragraph 32, PSD incorporates its admissions and denials in the previous paragraphs of this Answer as if fully rewritten herein.

33. Denies the allegations of paragraph 33 for want of knowledge or information sufficient to form a belief as to their truth.

34. In response to the allegations of paragraph 34, PSD admits that the Mechanic's Lien is attached as Exhibit C to the Complaint, states that the Mechanic's Lien speaks for itself, and denies the remaining allegations of paragraph 34 for want of knowledge or information sufficient to form a belief as to their truth.

35. States that the allegations of paragraph 35 set forth conclusions of law to which no response is required.

36. States that the allegations of paragraph 36 set forth a request for relief to which no response is required.

37. States that the allegations of paragraph 37 set forth a request for relief to which no response is required.

38. Deny each and every allegation in the Complaint not expressly admitted herein.

**FIRST AFFIRMATIVE DEFENSE:**

39. Younglove's claims in this matter are barred by its breaches of the contract as more fully set forth in PSD's Counterclaim below.

**SECOND AFFIRMATIVE DEFENSE:**

40. Younglove's claims are barred by a failure of consideration.

**THIRD AFFIRMATIVE DEFENSE:**

41. Younglove's claims are barred or reduced by the doctrines of set-off and/or recoupment.

**FOURTH AFFIRMATIVE DEFENSE:**

42. PSD reserves the right to amend this Answer to include such other and further defenses as may be determined through discovery or otherwise.


**WHEREFORE**, having fully answered the Complaint, PSD respectfully requests this Court to dismiss the Complaint at the cost of Younglove and for such other and further relief as is just and proper.

## COUNTERCLAIM

For its Counterclaim against Younglove, Counterclaim-Plaintiff PSD alleges and avers as follows:

1. PSD incorporates the admissions, denials and affirmative defenses set forth in its Answer as if fully rewritten herein.

2. PSD is an Ohio limited liability company with its principle place of business at 7148 State Highway 199, Upper Sandusky, Ohio 43351.

3. Younglove has its principal place of business at 2015 East Seventh Street, P.O. Box 8800, Sioux City, Iowa 51102. Younglove designs and builds bulk materials handling facilities.

4. On or around April 3, 2006, PSD entered into a valid and binding contract with Younglove (the "Contract") by which Younglove would undertake the "[d]etailed design and construction of an animal feed manufacturing facility" (the "Facility") for PSD on PSD's site.

5. The Contract required Younglove to provide both design and general contracting services with respect to the construction of the Facility.

6. The Facility was to be a slipform-built reinforced concrete feed mill with multiple levels of elevating, conveying, weighing and mixing equipment, as well as ingredient and feed silos. The main concrete structure was to be approximately 45 feet wide by 60 feet long and 179 feet high. The structure contains 58 reinforced concrete silos and multiple equipment floors.

7. The Contract included and incorporated by reference the Kalmbach Feeds Design/Build Bid Manual (the "Manual"), which provided the guidelines, including load-bearing requirements, for the design and construction of the Facility.

7

8. The Contract required Younglove to develop a design for the Facility based on the guidelines contained in the Manual.

9. Younglove developed a design for the Facility, which purported to comply with the latest editions of the International Building Code, the American Concrete Institute, the American Society of Civil Engineers, the Concrete Reinforcing Steel Institute, the American Institute of Steel Construction, the American Welding Society, and the National Concrete Masonry Association design manuals and codes.

10. When Younglove constructed the Facility, it provided materials that did not meet the specifications of its own design. Among other things, Younglove provided concrete for the Facility that was substantially weaker than the strength Younglove itself specified.

11. In order to meet the load-bearing and other design specifications and guidelines set forth in the Manual, Younglove designed the Facility to be constructed with concrete having a strength of 4000 psi.

12. Sampling of cores taken from the Facility revealed a number of cores having woefully insufficient strengths, even as low as 2300 psi, well below the promised and contractually required 4000 psi. As one of Younglove's Vice Presidents assigned to the Project put it, "The core samples are showing some alarming (not good) strength tests."

13. Even Younglove has admitted the ultimate compressive strength of the concrete used in the lower portions of the Facility was a scant 3067 psi. In fact, some of the concrete strengths were much lower.

14. The concrete used in the Facility has already begun to crack and show other signs of obvious defects.

15. Younglove originally claimed that its design relied only on the columns of the Facility, and not the walls, for structural strength. But after the Facility was built, Younglove conceded that the structural strength depended on both the columns and the walls. The walls, however, were built with concrete that is well below the specified strength.

16. The Facility Younglove built does not comply with the American Concrete Institute's ("ACI") standards governing the design and construction of concrete silos and the use of structural concrete. Younglove, however, claimed that the design and construction were in compliance with those standards.

17. Younglove failed to adequately reinforce the concrete in several critical areas of the Facility with steel reinforcing bar ("rebar") as required by ACI standards. Rather, Younglove simply claimed that the rebar it did include would support the structure sufficiently.

18. Younglove further failed to cover the rebar it did include in the Facility with sufficient concrete to protect it from the elements as required by ACI standards.

19. Younglove also designed and built a concrete foundation for a large grain bin as part of the Facility. The foundation Younglove designed and built, however, is defective and has settled unevenly.

20. This uneven settling of the foundation has caused the bin to bend out of shape, which has caused damage at the top edge and roof of the bin.

21. Because the stresses exerted on the grain-containment structures that comprise the Facility are so great, a substantially weaker construction compromises both the strength and durability of the Facility.

22. Indeed, Younglove's defective design of several critical areas of the Facility has resulted in ultimate loads exceeding capacity by as much as 100%.]

23. Younglove has been aware of the problems with its design and construction of the Facility since at least early 2007.

24. PSD gave Younglove formal, written notice of its intent to make a claim on February 15, 2007, and again on May 19, 2008.

25. Since this dispute arose in early 2007, PSD has continually made Younglove aware of any and all developments and defects with respect to the Facility.

26. To date, Younglove has done nothing meaningful to remedy the defects at the Facility.

## COUNT ONE

### (Breach of Contract)

27. PSD incorporates its previous statements and allegations contained in the preceding paragraphs of the Counterclaim as if fully restated herein.

28. The Contract between PSD and Younglove is supported by adequate consideration and is valid.

29. PSD has fully performed its duties pursuant to the Contract.

30. As described above, Younglove provided concrete for the Facility that was significantly weaker than the 4000 psi concrete required by both the Manual and Younglove's own design.

31. Younglove's design of the Facility is defective and does not meet the Contract specifications.

32. Younglove failed to comply with industry standards, in particular those set forth by the ACI, despite its express promise that its design would comply.

33. Younglove improperly designed and constructed a concrete foundation for PSD's grain bin that has caused further damage to the bin itself.

34. Younglove has breached the Contract by failing to design and construct the Facility according to the guidelines set forth in the Contract.

35. Younglove has also breached the Contract by failing to construct the Facility according to its design specifications.

36. Younglove's numerous breaches have resulted in a defective, substantially weaker, and less durable structure.

37. As a result of Younglove's breaches of the Contract, PSD has incurred damages in an amount to be determined at trial.

## COUNT TWO

### (Breach of Warranty)

38. PSD incorporates its previous statements and allegations contained in the preceding paragraphs of the Counterclaim as if fully restated herein.

39. Younglove warranted and guaranteed PSD that its construction would be in accordance with the Contract specifications and would not be defective. This obligation was "absolute," and PSD's use or occupancy of the Facility does not constitute an acceptance of Younglove's defective work that was not in accordance with the Contract.

40. PSD relied on Younglove to produce a Facility that complied with the above-mentioned design and construction standards.

41. PSD further relied on Younglove to produce a Facility that had the strength and durability required of a feed mill, as specified in the Manual.

42. Younglove failed to comply with the specifications set forth in the Contract.

11

43. As a result, the Facility Younglove built is inferior in terms of durability and strength due to Younglove's defective design and use of deficient materials, as described above.

44. As such, Younglove has breached the warranty and guarantee it made to PSD regarding the design and construction of the Facility.

**WHEREFORE**, PSD respectfully requests that this Court enter judgment against Younglove in an amount to be determined at trial, together with interest, reasonable attorney's fees and costs, and any and all further relief this Court deems just and proper.

Respectfully submitted,

/s/Michael R. Reed
Michael R. Reed (0063995)
ZEIGER TIGGES & LITTLE LLP
41 South High Street
Suite 3500
Columbus, Ohio 43215
(614) 365-9900 (phone)
(614) 365-7900 (fax)
*Attorneys for Defendant PSD Development, LLC*

## CERTIFICATE OF SERVICE

I hereby certify that on the 15th day of August, 2008, a copy of the foregoing was mailed to the individual(s) listed on the attached service list via first class mail, postage prepaid, or by electronic transmission to those capable of being served via ECF. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

Todd A. Harpst
Roetzel & Andress
222 South Main Street
Akron, OH 44308
*Attorney for Plaintiff Younglove Construction, LLC*

Douglas D. Rowland
Prosecuting Attorney Office - Wyandot County
137 South Sandusky Avenue
Upper Sandusky, OH 43351
*Attorney for Wyandot County Treasurer*

Joseph T. Chapman
Office of the Attorney General - Collections Enforcement
150 East Gay Street, 21st Floor
Columbus, OH 43215
*Attorney for Defendant State of Ohio Department of Jobs and Family Services*

John J. Hunter, Jr.
Hunter & Schank
One Canton Square
1700 Canton Avenue
Toledo, OH 43624
*Attorney for Defendant Ag Credit Agricultural Credit Association*

/s/Michael R. Reed
Michael R. Reed (0063995)