IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

Younglove Construction, LLC,                    Case No. 3:08CV1447

              Plaintiff

        v.                                       ORDER

PSD Development, LLC, et al.,

              Defendants

This is a contract dispute between a subcontractor and insurance company as to whether the

subcontractor's policy requires the insurance company to defend and indemnify it in the instant

litigation. Third-party defendant Custom Agri Systems, Inc. (Custom Agri) claims that intervening

defendant Westfield Insurance Co. (Westfield) must defend and indemnify Custom Agri in the

current litigation under Custom Agri's insurance contract with Westfield.

Jurisdiction is proper under 28 U.S.C. § 1332.[1]

Pending are: 1) Westfield's motion for summary judgment on Westfield's duty to defend and

indemnify Custom Agri [Doc. 115]; 2) Custom Agri's countermotion for summary judgment on

---

[1] Although both Custom Agri and Westfield are Ohio corporations, and thus not diverse, "federal jurisdiction once acquired on the ground of complete diversity of citizenship is unaffected by the subsequent intervention 'of a party whose presence is not essential to a decision of the controversy between the original parties[.]'" *Caterpillar Inc. v. Lewis*, 519 U.S. 61, 66 n.1 (1996) (citing *Wichita R.R. & Light Co. v. Pub. Util. Comm'n of Kan.*, 260 U.S. 48, 54 (1922)).

Here, Westfield's intervention is not essential to the original controversy, so its presence does not eliminate federal jurisdiction over the instant case.

Westfield's duty to defend Custom Agri [Doc. 148]; and 3) Westfield's motion to certify two questions of Ohio law to the Ohio Supreme Court [Doc. 159].

For the following reasons, Custom Agri's motion for summary judgment [Doc. 148] shall be granted, Westfield's summary judgment motion [Doc. 115] shall be denied, and Westfield's motion for certification [Doc. 159] shall be denied.

### Background

On April 3, 2006, Younglove Construction, LLC (Younglove) entered into a contract with PSD Development, LLC (PSD). Under this contract, Younglove was to ensure design and construction of an animal feed manufacturing facility for PSD.

In turn, Younglove hired Custom Agri as a subcontractor to design and construct a steel grain bin for this project. Custom Agri then obtained the bin from Brock Grain Systems (Brock), and subcontracted: 1) the design and installation of the cement foundation and discharge openings for the bin to Krietemeyer Silo (Krietemeyer); and 2) the erection of the bin to Jerry O'Conick.

Custom Agri completed its portion of the project, and the bin began operation in approximately October, 2007.

From late 2006 through 2007, a dispute developed between Younglove and PSD regarding the quality of materials and work performed, and regarding certain damages that PSD claimed flowed therefrom.

In late 2007, PSD informed Younglove that PSD was withholding partial payment because of the dispute.

In early 2008, Younglove filed a mechanic's lien against the project, and this litigation ensued when Younglove sued PSD for the balance of payments due.

2

PSD counterclaimed for damages from Younglove, and Younglove filed a third-party complaint against Custom Agri for contribution and indemnity. Custom Agri, in turn, filed similar complaints against its subcontractors and also demanded that Westfield defend and indemnify it in the instant litigation.

PSD asserts several claims possibly triggering Custom Agri's liability: 1) defective construction of the bin; 2) defective construction and/or installation of the foundation; 3) resultant damages from uneven settling of the foundation; 4) resultant damage to the bin due to it "bend[ing] out of shape"; 5) resultant damage to the "top edge and roof of the bin"; 6) financial damage from inability to use the bin; 7) improper and/or inadequate safety signage and warnings regarding the bin; and 8) resultant damage to the strength and durability of the entire facility from these issues. [Doc. 70-1, at 12-13 ¶¶ 31-39].

At all pertinent times, Westfield insured Custom Agri under a commercial general liability (CGL) policy.

**Standard of Review**

A party is entitled to summary judgment on motion under Rule 56 when the opposing party fails to show the existence of an essential element for which that party bears the burden of proof. *Celotex Corp. v. Cartrett*, 477 U.S. 317, 322 (1986).

The moving party must first show the absence of a genuine issue of material fact. *Id.* at 323.

Once the moving party meets that initial burden, the non-moving party "must [then] set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (quoting Fed. R. Civ. P. 56(e)). The non-moving party cannot rest on its pleadings or merely reassert its previous allegations. Rule 56(e) "requires the non[-]moving party

to go beyond the [unverified] pleadings" and present evidence in support of its position. *Celotex Corp.*, *supra*, 477 U.S. at 324.

In deciding a motion for summary judgment, a court accepts the non-moving party's evidence as true and construes the evidence in the light most favorable to the non-moving party. *Eastman Kodak Co. v. Image Technical Servs., Inc.*, 504 U.S. 451, 456 (1992). A court shall grant summary judgment only if the materials offered in support of the motion show that there is no genuine issue as to any material facts, and that the moving party is thus entitled to summary judgment as a matter of law. *Celotex Corp.*, *supra*, 477 U.S. at 323.

## Discussion[2]

The two questions at issue between Custom Agri and Westfield are whether Westfield must: 1) defend and, if so, 2) indemnify Custom Agri as to PSD's relevant claims in the instant litigation. The two duties are distinct, and an insurer may have to defend an insured, even if it ultimately need not indemnify the insured. *City of Sharonville v. Am. Employers Ins. Co.* (*Sharonville*), 109 Ohio St. 3d 186, 189 (2006).

### I. Westfield's Duty to Defend

The Ohio Supreme Court has stated: "'[W]here the insurer's duty to defend is not apparent from the pleadings in the action against the insured, but the allegations do state a claim is potentially or arguably within the policy coverage, or there is some doubt as to whether a theory of recovery

---

[2] A federal court exercising diversity jurisdiction applies the choice of law rules of the state in which it sits. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941). Where no dispute exists regarding choice of law, federal courts apply the law of the forum state. *Lulaj v. Wackenhut Corp.*, 512 F.3d 760, 764 (6th Cir. 2008) (observing that the forum state's law applies when parties fail to dispute choice of law).

Here, the parties do not dispute the application of Ohio law, so I apply Ohio law to this case.

4

within the policy coverage has been pleaded, the insurer must accept the defense of the claim.'" *Sanderson v. Ohio Edison Co.*, 69 Ohio St. 3d 582, 585-86 (1994) (quoting *City of Willoughby Hills v. Cincinnati Ins. Co.* (*Willoughby Hills*), 9 Ohio St. 3d 177, 180 (1984)). An insurer, therefore, "has an absolute duty to defend an action when the complaint contains an allegation in any one of its claims that could arguably be covered by the insurance policy[.]" *Sharonville*, *supra*, 109 Ohio St. 3d at 189 (internal citation omitted).[3] "Once an insurer must defend one claim within a complaint, it must defend the insured on all the other claims within the complaint, even if they bear no relation to the insurance-policy coverage." *Id.* (internal citation omitted).

The reason for this rule is that an insurer's duty to defend "may arise at a point subsequent to the filing of the complaint[,]" and "under the Federal Rules of Civil Procedure the dimensions of a lawsuit are not determined by the pleadings because the pleadings are not a rigid and unchangeable blueprint of the rights of the parties." *Willoughby Hills*, *supra*, 9 Ohio St. 3d at 179 (internal quotation and citation omitted).

An insurer "need not defend any action or claims within the complaint[, however,] when all the claims are clearly and indisputably outside the contracted coverage." *Ohio Gov't Risk Mgmt. Plan v. Harrison*, 115 Ohio St. 3d 241, 246 (2007).

---

[3] Courts formulating and applying this broad duty to defend rule originally did so in the context of insurance policies obligating the insurer to defend suits "even if any of the allegations of the suit are groundless, false or fraudulent." *E.g.*, *Sanderson*, *supra*, 69 Ohio St. 3d at 586.

The Ohio Supreme Court has recently clarified that the rule applies to all insurance policies, even in the absence of such language. *Cincinnati Ins. Co. v. Colelli & Assocs.*, 95 Ohio St. 3d 325, 325-26 (2002) (limiting to its facts *Preferred Risk Ins. Co. v. Gill*, 30 Ohio St. 3d 108, 114 (1987), which had held that a narrower duty to defend existed in the absence of the "groundless, false or fraudulent" insurance policy language).

If any arguable basis for coverage exists, therefore, Westfield has an absolute duty to defend Custom Agri. *Sharonville*, *supra*, 109 Ohio St. 3d at 189.[4]

## A. Coverage

PSD is suing Younglove, and Younglove in turn suing Custom Agri, on two general theories relevant to disposition of these motions: 1) defective construction; and 2) consequential damages stemming from such defective construction.[5]

## 1. Defective Construction

It is an open question under Ohio law whether defective construction claims fall under the auspices of a CGL policy like that Custom Agri has with Westfield. *Compare Erie Ins. Exch. v. Colony Dev. Corp.* (*Colony I*), 136 Ohio App. 3d 406, 414 (10th Dist. 1999) (holding that such a policy does protect against such claims); *Ind. Ins. Co. v. Alloyd Insulation Co.*, 2002 WL 1770491, *4 (Ohio Ct. App. 2d Dist.) (same); *Cincinnati Ins. Co. v. G.L.H., Inc.*, 2008 WL 2940663, *7 (Ohio Ct. App. 6th Dist.) (same), *vacated on other grounds*, 2008 WL 4408597 (Ohio Ct. App. 6th Dist.), *with Heile v. Herrmann*, 136 Ohio App. 3d 351, 354 (1st Dist. 1999) (holding that such a policy does not protect against such claims); *Royal Plastics, Inc. v. State Auto. Mut. Ins. Co.*, 99 Ohio App. 3d 221, 225-26 (8th Dist. 1994) (same); *Envtl. Exploration Co. v. Bituminous Fire & Marine Ins. Co.*

---

[4] Interpretation of an insurance policy is a question of law. *Sharonville*, *supra*, 109 Ohio St. 3d at 187 (internal citation omitted). If policy provisions "are susceptible of more than one interpretation, they will be construed strictly against the insurer and liberally in favor of the insured[,]" and "an exclusion in an insurance policy will be interpreted as applying only to that which is clearly intended to be excluded." *Id.*

[5] Although PSD's counts are for "breach of contract" and "breach of warranty," PSD's allegations also imply tort claims, which may also constitute "claim[s that are] potentially or arguably within the policy coverage, and [about which] there is some doubt as to whether a theory of recovery within the policy coverage has been pleaded[.]" *Sanderson*, *supra*, 69 Ohio St. 3d at 585-86. Such allegations are also relevant to potential coverage. *Id.*

(*Bituminous*), 2000 WL 1608908, *6 (Ohio Ct. App. 5th Dist.) (same); *Ohio Cas. Ins. Co. v. Hanna*, 2008 WL 2581675, *4 (Ohio Ct. App. 9th Dist.) (same); *Westfield Ins. Co. v. R.L. Diorio Custom Homes, Inc.* (*Diorio*), 2010 WL 918030, *3 (Ohio Ct. App. 12th Dist.) (same).

I need not resolve this question, however, because I find that even assuming *arguendo* that Custom Agri's policy covers defective construction, the contractual liability exclusion removes such claims from coverage. *See* Part I.B.1, *infra*.[6]

Custom Agri's insurance policy thus does not provide coverage for defective construction claims.

## 2. Consequential Damages

Consequential damages, however, even those resulting from defective construction, are covered by Custom Agri's insurance policy. *See Heile*, *supra*, 136 Ohio App. 3d at 354 (holding as not covered the defective construction claims, because "[t]he damages alleged by [the property owner] all relate to [the insured]'s (or his subcontracters') own work, not to any *consequential damages stemming from that work*" (emphasis added)); *Royal Plastics*, *supra*, 99 Ohio App. 3d at

---

[6] It is because the contractual liability exclusion removes such claims from coverage that I must deny Westfield's request that I certify questions to the Ohio Supreme Court. [Doc. 159].

The Rules of Practice of the Supreme Court of Ohio permit it to answer questions I certify to it if I "find[] there is a question of Ohio law that may be determinative of the proceeding and for which there is no controlling precedent in the decisions of this Supreme Court." Ohio Sup. Ct. Prac. R. XVIII, § 1.

Here, however, Westfield's first question is not determinative of the proceeding in light of my interpretation of the contractual liability exclusion. Westfield's second question, meanwhile, does not raise a question that merits certification either, because: 1) the contractual liability exclusion's interpretation is clear from the exclusion's language; and 2) even if answered in the affirmative – as I do – it is not determinative of the proceeding. *See, e.g.*, *Super Sulky, Inc. v. U.S. Trotting Ass'n*, 174 F.3d 733, 744 (6th Cir. 1999).

Westfield's motion for certification [Doc. 159] is, therefore, denied.

7

225-26 (same); *Bituminous*, *supra*, 2000 WL 1608908, *6 (same); *Hanna*, *supra*, 2008 WL 2581675, *4 (same); *Diorio*, *supra*, 2010 WL 918030, *3 (same).

The main question, then, is whether any of the exclusions that Westfield cites unambiguously removes such consequential damages claims from coverage.

## B. Exclusions

Westfield points to six exclusions in Custom Agri's policy that Westfield claims apply and remove PSD's claims from coverage under Custom Agri's policy. All but one – the professional services exclusion – constitute what courts generally refer to as "business risk" exclusions.

"Business risks" are "risks that are the normal, frequent, or predictable consequences of doing business, and which business management can and should control or manage." *Heile*, *supra*, 136 Ohio App. 3d at 353. These exclusions – and this general concept – are "expressed in a number of different ways but [are] always a function of the perception that an insured should not be able to look to its [CGL] policy to protect it against the costs of having to repair or replace its work because it was improperly performed in the first place." *Erie Ins. Exch. v. Colony Dev. Corp.* (*Colony II*), 2003 WL 23096010, *5 (Ohio Ct. App.).

Such exclusions – and the doctrine underlying them – moreover:

> ha[ve] become a fixture of insurance coverage law. At its core, the "business risk" concept expresses a principle that general liability coverage is designed to protect against the unpredictable, potentially unlimited liability that can result from business accidents. CGL coverage is not for contractual liability of the insured for economic loss because the product or completed work is not that for which the damage person bargained.

*Id.*, *4 (internal quotation and citation omitted); *see also Westfield Ins. Co. v. Riehle*, 113 Ohio App. 3d 249, 254 (1996) ("Generally, Ohio courts have found that such standard exclusions are intended to insure business risks which are outside of the insured's control, such as accidental injury to

8

persons or property, and not those which are within the control of the insured, such as the risk of not performing well and the risk of causing personal injury and property damage.").

Put differently, CGL policies "do not insure an insured's work itself; rather, the policies generally insure *consequential* risks that stem from the insured's work." *Haile*, *supra*, 136 Ohio App. 3d at 353 (emphasis added).

### 1. Contractual Liability Exclusion

The first exclusion Westfield claims applies is that for "contractual liability," which excludes: "'property damage' for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages: (1) That the insured would have in the absence of the contract or agreement[.]" [Doc. 115-10, at 3].

Westfield points to several cases holding that the contractual liability exclusion prevents recovery for claims premised on a breach of contract. *See LISN v. Commercial Union Ins. Cos.*, 83 Ohio App. 3d 625, 631 (1992); *Victoria's Secret Stores, Inc. v. Epstein Contracting, Inc.* (*Victoria's Secret*), 2002 WL 723215, *4-5 (Ohio Ct. App.); *Akers v. Beacon Ins. Co. of Am.*, 1987 WL 16260, *3 (Ohio Ct. App.).

Custom Agri, meanwhile, identifies a single case that it purports holds the opposite: *National Engineering & Contracting Co. v. U.S. Fidelity & Guaranty Co.* (*National Engineering*), 2004 WL 1103993, *6 (Ohio Ct. App.).

The cases the parties cite are not directly on point. In *LISN*, *Akers* and the related case of *State Automobile Mutual Insurance Co. v. Fairfield Homes, Inc.*, 1989 WL 139822, *3 (Ohio Ct. App.), Ohio courts merely held that the contractual liability exclusion does not *expand* coverage

9

beyond the scope of the coverage granting provisions. *LISN*, *supra*, 83 Ohio App. 3d at 631-32; *Akers*, *supra*, 1987 WL 16260, *3. In *Victoria's Secret*, *supra*, 2002 WL 723215, *3, meanwhile, the court discussed the application of the contractual liability exclusion, but under New Jersey law.

Only *National Engineering* guides my interpretation of this exclusion. The court there held that general "business risk exclusions do not defeat an insurer's duty to defend if there are allegations of 'collateral' damage[,]" though the exclusions remove the business risks themselves from coverage. 2004 WL 1103993, *6.

Many Ohio courts have recognized this distinction in interpreting insurance policy business risk exclusions. *See, e.g.*, *Haile*, *supra*, 136 Ohio App. 3d at 353 (stating that CGL policies "do not insure an insured's work itself; rather, the policies generally insure consequential risks that stem from the insured's work"); *Beaverdam Contracting, Inc. v. Erie Ins. Co.*, 2008 WL 4378153, *5 (Ohio Ct. App.) ("Courts have generally concluded that [CGL] policies are intended to insure the risks of an insured causing damage to other persons and their property, but they are not intended to insure the risks of the insured causing damages to the insured's own work."); *Colony II*, *supra*, 2003 WL 23096010, *4-5 (holding that business risk exclusions denied coverage for faulty work itself, but not for damage resulting from faulty work); *Holub Iron & Steel Co. v. Mach. Equip. & Salvage Co.*, 1986 WL 7762, *2 (Ohio Ct. App.) ("For instance, if a contractor negligently installs a roof which must be removed and replaced, he must bear the cost of removing the faulty roof and installing a new one but the insurance will pay for any damage allowed or caused to the underlying building or its contents.").

The court in *Indiana Insurance Co.* put it most clearly:

> Coverage analysis largely turns on the damages sought. If the damages are for the insured's own work, there is generally no coverage. If the damages are consequential

10

and derive from the work the insured performed, coverage generally will lie. The underwriting intent is to exclude coverage for the contractor's business risks, but provide coverage for unanticipated consequential damages.

2002 WL 1770491, *3.

While the court in *National Engineering* never specifically referenced the contractual liability exclusion, the thrust of its holding about business risks generally – echoed in the cases cited immediately above – applies squarely to this exclusion. The exclusion's language removes from coverage claims that seek "damages by reason of the assumption of liability in a contract[.]" [Doc. 115-10, at 3]. Such damages are only those for explicit breaches of contract, not for damages stemming therefrom. This narrow reading is required due to the Ohio Supreme Court's instruction that "an exclusion in an insurance policy will be interpreted as applying *only to that which is clearly intended to be excluded*." *Sharonville*, *supra*, 109 Ohio St. 3d at 189 (emphasis added).

PSD's breach of contract actions against Younglove – and possibly Custom Agri also – thus fall squarely under the contractual liability exclusion and are excluded from coverage, because they seek "damages by reason of the assumption of liability in a contract[.]" [Doc. 115-10, at 3]. PSD's consequential damage claims, however, are not excluded from coverage under this exclusion.

## 2. Damage to Property Exclusion

The second exclusion Westfield claims applies is that for "Damage to Property," which excludes:

"[p]roperty damage" to:

.   .   .   .

(5) That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or

11

(6) That particular part of any property that must be restored, repaired or replaced because "your work"[7] was incorrectly performed on it.

[Doc. 115-10, at 5-6].

The policy, however, states: "Paragraph (6) of this exclusion does not apply to 'property damage' included in the 'products-completed operations hazard.'" [*Id.*, at 6]. It defines the "products-completed operations hazard" as:

[i]nclud[ing] all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" *except*:

(1) Products that are still in your physical possession; or

(2) Work that has not yet been completed or abandoned. However, "your work" will be deemed completed at the earliest of the following times:

(a) When all of the work called for in your contract has been completed.

(b) When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site.

(c) When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

[*Id.*, at 16 (emphasis added)].

Westfield concedes that "[b]oth [sub-]exclusions apply to 'works in progress.'" [Doc. 115-4, at 12 (internal citation omitted)]. Westfield nonetheless argues that these sub-exclusions apply because "all such 'property damage' would be deemed to occur at the time Younglove and Custom

---

[7] The policy defines "your work" as: "(1) Work or operations performed by you or on your behalf; and (2) Materials, parts or equipment furnished in connection with such work or operations." [Doc. 115-10, at 17].

Agri were working on the Project–which was the moment of the first exposure to injurious conditions." [*Id.*, at 13].

Custom Agri responds that the property damage PSD identifies occurred after construction of the bin ended and PSD put it to use.

Sub-exclusion (5) only applies when the alleged damages occur while the insured "[is] performing operations." [Doc. 115-10, at 5]. Sub-exclusion (6), meanwhile, only applies when the alleged damages occur before the insured has completed or relinquished possession of the work. [Doc. 115-10, at 6, 16]. Ohio courts have consequently held that both of these sub-exclusions apply only to "works in progress." *E.g.*, *Spears v. Smith*, 117 Ohio App. 3d 262, 266 (1996).

In *Spears*, the court held that the sub-exclusions did not apply because "damage to those portions of the home built by subcontractors [] did not surface until after the Spearses began residing in their new home." *Id.* In *I.G.H. II, Inc. v. Selective Insurance Co. of South Carolina*, 2007 WL 1378379, *4 (Ohio Ct. App.), by contrast, the court held that these sub-exclusions precluded coverage when the insured killed numerous lawns by misapplying pesticide, notwithstanding the fact that the property damage took time to show.

Here, like the house damage in *Spears* and unlike the lawn damage in *I.G.H. II*, the alleged consequential damage potentially occurred after Custom Agri completed its work and turned the bin over to PSD. PSD's amended counterclaim alleges that the bin was damaged when it "settled unevenly[.]" [Doc. 70-1, at 13 ¶ 33]. PSD further alleges that defective elements of the bin "caused the bin to bend out of shape, which has in turn caused damage to the top edge and roof of the bin." [*Id.* ¶ 34].

13

These claims demonstrate that at least these consequential damages arguably occurred after Custom Agri turned over the bin to PSD. The "damage to property" exclusion thus does not preclude coverage for at least these claims.

### 3. Damage to Your Product Exclusion

The third exclusion Westfield claims applies is that for "Damage to Your Product," which excludes: "'[p]roperty damage' to 'your product' arising out of it or any part of it." [Doc. 115-10, at 6].

The policy defines "your product" as, in relevant part: "(1) Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by . . . you; [and] . . . (2) Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products." [*Id.*, at 17].

Westfield seems to point to this exclusion – as well as the next two – to show that Custom Agri's policy does not cover damage to Custom Agri's product or work, because a CGL policy is not intended to insure "business risks." *Riehle*, *supra*, 113 Ohio App. 3d at 254.

Custom Agri responds that, while this – and the next – exclusion may "preclude coverage for property damage to Custom Agri's product or work itself[,]" it "do[es] not preclude coverage for property damage incurred by PSD *arising out of* Custom Agri's product or work[.]" [Doc. 148, at 15 (emphasis added)].

This exclusion "operates to bar coverage for damage to anything the contractor installs but does not apply to damage to the underlying support or its contents allowed by or caused by [a] contractor's negligence." *Holub Iron & Steel Co.*, *supra*, 1986 WL 7762, *2. Ohio courts have clarified, however, that the work product exclusion does not apply where the "damage to the

14

insured's product [is] caused by another of its product[s]." *Ferro Corp. v. Blaw Knox Food & Chem. Equip. Co.*, 2002 WL 31260495, *4 (Ohio Ct. App.).

Two Ohio courts of appeal, moreover, have held that structures attached to land arguably constitute "real property" excepted from definition as "your product." *Dublin Bldg. Sys. v. Selective Ins. Co.*, 172 Ohio App. 3d 196, 203-04 (2007); *Cincinnati Ins. Co.*, *supra*, 2008 WL 2940663, *7. In *Dublin Building Systems*, the court held that the "your product" exclusion did not prevent coverage for structures attached to the land, because "the term 'real property' is generally recognized as including both land and the structures affixed thereto." 172 Ohio App. 3d at 204.

Here, as in *Dublin Building Systems*, the concrete foundation and bin were allegedly and arguably attached to the real property, and thus damages to those items do not fall within the "your product" exclusion. The alleged consequential damage caused to other Custom Agri or PSD products – such as the roof and sides of the bin, and the financial damages from inability to store corn in the bin – are also not precluded by this exclusion. *See Riehle*, *supra*, 113 Ohio App. 3d at 254; *Ferro Corp.*, *supra*, 2002 WL 31260495, *4; *Holub Iron & Steel Co.*, *supra*, 1986 WL 7762, *2.

The "your product" exclusion thus does not preclude coverage for PSD's claims against Custom Agri for such damages or consequential damages.

### 4. Damage to Your Work Exclusion

The fourth exclusion Westfield claims applies is that for "Damage to Your Work," which excludes: "'[p]roperty damage' to 'your work' arising out of it or any part of it and included in the 'products-completed operations hazard.'" [Doc. 115-10, at 6].

15

This exclusion, however, "does not apply if the damaged work or the work out of which the damages arises was performed on your behalf by a subcontractor." [*Id.*].

This "is the exclusion that addresses coverage for property damage to completed work performed by or on behalf of the named insured." *Spears*, *supra*, 117 Ohio App. 3d at 267. It "appl[ies] only to work within the product-completed operations hazard [and thus] . . . has no bearing on works in progress." *Id.* The court in *Spears*, however, found that this exclusion did not apply because "[t]he 'damaged work' at issue . . . was performed by [the insured]'s subcontractors." *Id.* at 268; *see also Colony I*, *supra*, 136 Ohio App. 3d at 416 (holding inapplicable this exclusion where "subcontractors performed work on behalf of [the insured]"); *Cincinnati Ins. Co.*, *supra*, 2008 WL 2940663, *7 (rejecting applicability of the "your work" exclusion where "G.L.H. submitted evidence in its opposition to summary judgment that some of the alleged damage was caused by work performed by subcontractors"); *Hanna*, *supra*, 2008 WL 2581675, *7 (rejecting applicability of the "your work" exclusion where the insured damaged a subcontractor's work); *Colony II*, *supra*, 2003 WL 23096010, *7 (same); *Acme Steak Co. v. Great Lakes Mech. Co.*, 2000 WL 1506199, *8 (Ohio Ct. App.) (same).

Here, as in *Spears*, *Cincinnati Insurance*, *Hanna*, *Colony I* and *Colony II*, the "your work" exclusion's subcontractor exception applies. Custom Agri subcontracted to: 1) Brock to provide the allegedly defective grain bin; 2) Krietemeyer for design and installation of the foundation; and 3) O'Conick for erection of the bin. The damages PSD asserts thus at least arguably arise out of work that subcontractors performed for Custom Agri. Other, consequential, damages also possibly stem from Custom Agri's work, and conceivably do not regard simply Custom Agri's work, but third-party preexisting property. *Colony I*, *supra*, 136 Ohio App. 3d at 416.

16

The conclusion that this exclusion does not bar coverage is especially justified in light of a CGL policy's intent to insure against "business risks," but not consequential damages thereto. *E.g.*, *Haile*, *supra*, 136 Ohio App. 3d at 353; *Riehle*, *supra*, 113 Ohio App. 3d at 254.

The "your work" exclusion thus does not preclude coverage for PSD's subcontractor-derivative or consequential damage claims against Custom Agri.

### 5. Damage to Impaired Property or Property Not Physically Injured Exclusion

The fifth exclusion Westfield claims applies is that for "Damage to Impaired Property or Property Not Physically Injured," which excludes:

"[p]roperty damage" to "impaired property"[8] or property that has not been physically injured, arising out of:

> (1) A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

---

[8] The policy defines "impaired property" as:

tangible property, other than "your product" or "your work," that cannot be used or is less useful because:

> a. It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or
>
> b. You have failed to fulfill the terms of a contract or agreement;

if such property can be restored to use by:

> a. The repair, replacement, adjustment or removal of "your product" or "your work;" or
>
> b. Your fulfilling the terms of the contract or agreement.

[Doc. 115-10, at 14].

17

> (2) A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

[Doc. 115-10, at 6].

This exclusion, however, "does not apply to the loss of use of other property arising out of sudden and accidental physical injury to 'your product' or 'your work' after it has been put to its intended use." [*Id.*].

For this exclusion to apply, therefore, there must be property damage either to: 1) physically uninjured property; or 2) "impaired property," which is "tangible property, other than 'your product' or 'your work.'" [*Id.*, at 6, 14].

The court in *Westfield Insurance Co. v. Coastal Group, Inc.*, 2006 WL 120041, *4 (Ohio Ct. App.), held that the exclusion applied and property was not physically injured where an insured "claimed 'property damage' in the form of loss of use of her buildings." The court excluded the insured's other claims under the "impaired property" prong of this exclusion because the insured faced solely "breach of contract claim[s]" involving tangible property unusable because of those contractual failures. *Id.*

In *Acme Steak Co.*, *supra*, 2000 WL 1506199, *9, meanwhile, the court held that this exclusion did not apply where the insured faced claims cognizable under other theories than simply breach of contract – namely, for collateral damages.

Here, like *Acme Steak* and unlike *Coastal Group*, there was arguably property damage to physically injured property, and also collateral damage not encompassed by breach of contract claims. PSD's consequential damage claims against Custom Agri thus fall outside the scope of this exclusion.

18

This exclusion does not apply also for another reason: The property damage to the foundation and bin potentially arose out of "sudden and accidental physical injury" [Doc. 115-10, at 6] after PSD put the products to their intended use. In *United Steel Fabricators, Inc. v. Fidelity & Guaranty Insurance Underwriters, Inc.*, 1993 WL 69258, *3 (Ohio Ct. App.), the court held that the "impaired property" exclusion did not prevent coverage because cracks in the joints of a bridge arguably arose "suddenly" and "accidentally" after the insured put the bridge to use.

Similarly, here the settling of the foundation and the damage to the roof and bin potentially occurred suddenly and accidentally after PSD put the bin to use.

The "impaired property" exclusion thus does not preclude coverage for PSD's consequential damage claims against Custom Agri.

### 6. Professional Services Exclusion

The sixth exclusion Westfield claims applies is that for "Contractors – Professional Liability," which excludes:

> "property damage" .  .  .  arising out of the rendering of or failure to render any professional services by you or on your behalf, but only with respect to either or both of the following operations:
>
> a. Providing engineering, architectural or surveying services to others in your capacity as an engineer, architect or surveyor; and
>
> b. Providing, or hiring independent professionals to provide, engineering, architectural or surveying services in connection with construction work your perform.

[Doc. 115-11, at 11].

The insurance policy then states that "professional services" include: "a. Preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field

19

orders, change orders, or drawings and specifications; and b. Supervisory or inspection activities performed as part of any related architectural or engineering activities." [*Id.*].

The policy explicitly notes, however: "Professional services do *not* include services within construction means, methods, techniques, sequences and procedures employed by you in connection with your operations in your capacity as a construction contractor." [*Id.* (emphasis added)].

Clarifying this distinction, Ohio courts have noted that "this exclusion does not apply to those damages resulting from [an insured]'s construction activities, including those performed on its behalf by subcontractors[, because c]onstruction activities are not professional services." *Colony I*, *supra*, 136 Ohio App. 3d at 417.

The exception to this exclusion quoted above echoes this distinction, and Westfield admits as much in its motion for summary judgment. [Doc. 115-4, at 16 ("Although the Professional Liability Exclusion does not generally apply to construction activities, it does apply to damages due to design of the Bin.")].

Even though the professional services exclusion therefore removes from coverage "the rendering of professional services including plans, designs and specifications," *Gen. Accident Ins. Co. v. Ins. Co. of N. Am.*, 69 Ohio App. 3d 52, 61 (1990), such as the design of the bin or foundation, this exclusion does not remove coverage for the other construction or consequential damages claims alleged against Custom Agri. *Colony I*, *supra*, 136 Ohio App. 3d at 417.

The "professional liability" exclusion thus does not preclude coverage for PSD's construction-based or consequential damage claims against Custom Agri.

20

**7. Conclusion on Exclusions and Westfield's Duty to Defend**

Having thus found that none of the exclusions Westfield identifies "clearly and indisputably" eliminates Custom Agri's coverage for at least PSD's consequential damage claims, *Harrison*, *supra*, 115 Ohio St. 3d at 246, I hold that Westfield has an absolute duty to defend Custom Agri in the instant litigation. *Sharonville*, *supra*, 109 Ohio St. 3d at 189 (internal citation omitted).

Custom Agri's motion for summary judgment on Westfield's duty to defend is, therefore, granted, and Westfield's motion on the same issue is denied.

## II. Westfield's Duty to Indemnify

Westfield seeks summary judgment also on indemnification, arguing that its contract with Custom Agri precludes coverage for all of PSD's claims.

Custom Agri responds that, so long as its claims are "arguably or potentially within the relevant policy's grant of coverage" such that Westfield's duty to defend attaches, discussion of indemnification prior to determination of the facts is premature. [Doc. 148, at 10].

Custom Agri is correct:

> An insurer's duty to defend is separate and distinct from its duty to indemnify. . . . Moreover, once a duty to defend is recognized, speculation about the insurer's ultimate obligation to indemnify is premature until facts excluding coverage are revealed during the defense of the litigation and the insurer timely reserves its rights to deny coverage.

*Colony I*, *supra*, 136 Ohio App. 3d at 412-13; *see also WAS, Inc. v. Alea London, Ltd.*, 161 Ohio App. 3d 111, 113 (2005).

Having found that Westfield has an absolute duty to defend Custom Agri in this action, I believe it would be premature for me to speculate on indemnification based on an incomplete set of facts.

Westfield's motion for summary judgment on indemnification is therefore denied, without prejudice.

## Conclusion

For the foregoing reasons, it is hereby:

ORDERED THAT:

1. Custom Agri's countermotion for summary judgment [Doc. 148] be granted and Westfield's motion for summary judgment [Doc. 115] be denied regarding Westfield's duty to defend;

2. Westfield's summary judgment motion [Doc. 115] be denied, without prejudice, regarding its duty to indemnify; and

3. Westfield's motion for certification [Doc. 159] be denied.

So ordered.

s/James G. Carr
U.S. District Judge