IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

Younglove Construction, LLC,            Case No. 3:08CV1447

       Plaintiff

     v.                                               ORDER

PSD Development, LLC, et al.,

       Defendants

       This is a dispute between a contractor, Younglove Construction, LLC (Younglove), and the client hiring the contractor, PSD Development, LLC (PSD). Defendant PSD contracted with plaintiff Younglove to build an animal feed manufacturing facility, but withheld part of the contract price because it believed Younglove breached the contract.

       Jurisdiction is proper under 28 U.S.C. § 1332.

       Pending is PSD's motion to dismiss five of Younglove's claims [Doc. 105]: 1) unjust enrichment; 2) breach of the duty of good faith and fair dealing (in contract); 3) breach of the duty of good faith and fair dealing (in tort); 4) conversion; and 5) declaratory relief as to PSD's warranty under the contract.

       For the following reasons, PSD's motion shall be granted.

**Background**

On April 3, 2006, Younglove entered into a contract with PSD. Under this contract, Younglove was to ensure design and construction of an animal feed manufacturing facility for PSD.

Beginning in late 2006 and continuing through 2007, disputes arose between Younglove and PSD about the quality of materials, work and damages PSD claimed flowed from Younglove's allegedly inadequate performance.

In late 2007, PSD told Younglove that PSD was withholding partial payment because of the dispute.

In early 2008, Younglove filed a mechanic's lien against the project. Younglove has now sued PSD for the balance of payments due and other damages.

**Standard of Review**

A claim survives a motion to dismiss under Fed. R. Civ. P. 12(b)(6) if it "contain[s] sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, U.S. , 129 S. Ct. 1937, 1949 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* A complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all of the complaint's allegations are true." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007) (internal citations omitted).

A complaint is insufficient "if it tenders naked assertions devoid of further factual enhancement." *Iqbal*, *supra*, 129 S. Ct. at 1949 (citing *Twombly*, *supra*, 550 U.S. at 557) (internal quotation omitted).

I must also "construe the complaint in the light most favorable to the plaintiff." *Inge v. Rock Fin. Corp.*, 281 F.3d 613, 619 (6th Cir. 2002). Plaintiff, however, must provide "more than labels

and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, *supra*, 550 U.S. at 555; *see also Iqbal*, 129 S.Ct. at 1949 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").

## Discussion

### I. Unjust Enrichment[1]

PSD argues that Younglove may not maintain a claim for unjust enrichment because "a party to an express contract cannot seek relief under the contract and also seek equitable relief, such as unjust enrichment[.] . . . Unjust enrichment relies on a theory of quasi-contract, or contracts implied in law, and it has no applicable if an express contract exists." [Doc. 105, at 3]. As PSD acknowledges there is a valid and enforceable contract here, PSD argues that an unjust enrichment argument will not lie.

Younglove responds that its "alternatively pled claim for unjust enrichment" should not be dismissed because "Younglove's claim for unjust enrichment arises outside of the Contract Documents[.]" [Doc. 122, at 9]. Younglove specifically avers: "Younglove has been forced to

---

[1] Younglove presents this claim as one contingent on either PSD or myself finding the contract between the two parties unenforceable: "*[I]f and to the extent PSD Development should allege or this Court should find that the express contract is not enforceable or is legally deficient*, then as an alternative to Count One [breach of contract], Younglove alleges that it is entitled to recover the reasonable value of work performed and improvements provided to PSD Development in *quantum meruit* and to prevent an unjust enrichment to PSD Development." [Doc. 69, at 6 ¶ 34 (emphasis added)].

PSD does not contest the validity of the contract in its answer, and I find no reason to do so either. Thus, examining solely the pleadings and construing Younglove's complaint according to the rules of ordinary English grammar, I find that Younglove maintains no claim for unjust enrichment/quantum meruit. This is so because the "if" clause of Younglove's second Count is not satisfied, thus precluding me from examining its "then" clause asserting said claim.

Even assuming Younglove pleads its unjust enrichment claim entirely separately from its breach of contract claim, however, it cannot here maintain such a claim, as explained below.

finance all of the materials and labor for PSD Development's project. The Contract Documents did not contemplate that Younglove would finance PSD Development's feed mill project. Nor did the Contract Documents contemplate that PSD Development would use the feed mill without payment to Younglove." [*Id.* at 9-10 (internal citations to the record omitted)].

"[T]o prove unjust enrichment, a plaintiff must establish [1)] a benefit conferred by the plaintiff upon a defendant, [2)] the defendant's knowledge of the benefit, and [3)] the defendant's retention of the benefit under circumstances where it would be unjust to do so without payment." *Cantwell Mach. Co. v. Chicago Mach. Co.*, 184 Ohio App. 3d 287, 291 (2009); *see also Legros v. Tarr*, 44 Ohio St. 3d 1, 7 (1989).

Ohio courts have emphasized, though, that "[u]njust enrichment operates in the absence of an express contract or a contract implied in fact[.]" *Kincaid v. Erie Ins. Co.*, 183 Ohio App. 3d 748, 757 (2009) (citing *Univ. Hosps. of Cleveland, Inc. v. Lynch*, 96 Ohio St. 3d 118, 130 (2002)). "Importantly, unjust enrichment cannot exist where there is a valid and enforceable written contract." *Id.*

Here, Younglove argues that the "benefit" PSD received was that Younglove "financed" the project. What Younglove suggests is that it purchased the materials and built the structure, and then PSD paid Younglove.

This relationship, however, does not exist outside of the present "valid and enforceable written contract." *Id.* In almost any contract, one party must perform before the other. Either the paying party performs (i.e., pays) first, or the constructing party performs (i.e., builds) first. To argue that such an arrangement exists "outside of the contract" would be to impose too stringent a requirement on the concept of contractual liability. Younglove cannot create a contractual alternative

4

supporting a claim for unjust enrichment simply by pointing to the order in which the parties fulfilled their contractual duties. In most contracts, performance is not absolutely simultaneous. Younglove's argument - taken to its logical conclusion - would allow these parties to sue and recover for unjust enrichment and breach of contract. Ohio law permits no such thing: "unjust enrichment cannot exist where there is a valid and enforceable written contract." *Id.*

Younglove thus cannot maintain a claim for unjust enrichment, and I grant PSD's motion to dismiss this claim.

## II. Breach of the Duty of Good Faith and Fair Dealing (in Contract)

### A. Generally

Younglove brings an independent claim for breach of the duty of good faith and fair dealing. PSD argues that Younglove's breach of contract claim subsumes this claim.

Younglove discusses at length the requirement of the duty of good faith and fair dealing, grounded in basic contract law. It argues: "The fact that it may be a sub-set of a breach of contract claim does not somehow render it invalid. Younglove is permitted to plead its claims in the alternative[.]" [*Id.* at 6].

PSD acknowledges that a duty to act in good faith exists under the law of contract, but notes: "Younglove's repeated citations to this same rule from a number of cases does not mean it has a standalone claim for breach of 'good faith' when the only claim in this case is for payment on the Contract." [Doc. 137, at 4]. PSD, further, argues that the type of discretion at issue here does not give rise to an independent cause of action for breach of the duty of good faith.

Ohio courts have held that parties may not bring separate claims for breach of contract and breach of the duty of good faith, because the latter is premised on the former. *See Lakota Loc. Sch.*

5

*Dist. Bd. of Educ. v. Brickner*, 108 Ohio App. 3d 637, 646 (1996) (*Lakota*) ("[N]either *Brown* nor *Bolling* stands for the proposition that a breach of good faith exists as a separate cause of action from a breach of contract claim. Instead, they recognize the fact that good faith is part of contract claim and does not stand alone."); *Interstate Gas Supply, Inc. v. Calex Corp.*, 2006 WL 328679, *20 (Ohio Ct. App.) ("[A]n allegation of a breach of the implied covenant of good faith cannot stand alone as a separate cause of action from a breach of contract claim[.]"); *see also Wauseon Plaza Ltd. v. Wauseon Hardware Co.*, 156 Ohio App. 3d 575, 587 (2004) (same); *Krukrubo v. Fifth Third Bank*, 2007 WL 4532689, *5 (Ohio Ct. App.) (same).

These courts have thus held that a breach of contract claim "subsumes" one for breach of the duty of good faith. *Brickner*, *supra*, 108 Ohio App. 3d at 646; *Krukrubo*, *supra*, 2007 WL 4532689, *5 ("In essence, a claim for breach of contract subsumes the accompanying claim for breach of the duty of good faith and fair dealing.").

Younglove asserts a breach of contract claim as well as one for breach of the duty of good faith. Because the latter stems from the former and PSD moves to dismiss only the latter, Younglove's breach of contract claim subsumes its breach of the duty of good faith claim absent an alternative ground besides contract law for the latter.

### B. Other Possible Foundations for Such a Claim

Younglove appears to advance two alternative rationales for grounding such a claim: 1) PSD's alleged discretion to be "satisfied" as to Younglove's completion of the contract; and 2) the two parties' alleged special fiduciary relationship.

### 1. Satisfaction Clause

6

First, Younglove claims that PSD breached this duty when PSD declined to "exercise its discretionary power [under the contract] to approve Younglove's pay applications in good faith." [Doc. 122, at 4 (citing *Hutton v. Monograms Plus, Inc.*, 78 Ohio App. 3d 176 (1992))]. In so arguing, Younglove points to a clause in the contract, which states: "If Owner is satisfied that the Work has been completed and Design/Builder's other obligations under the contract Documents have been fulfilled, Owner will, within ten days after receipt of the final Application for Payment, give written notice to Design/Builder that the Work is acceptable." [Doc. 1-2, at 37].

PSD responds that the type of discretion at issue here does not give rise to an independent cause of action for breach of the duty of good faith. PSD specifically observes that the contract's satisfaction clause is not of the sort governed by the good faith test.

In *Hutton*, the case that Younglove cites, the court differentiated between two types of satisfaction clauses: where the satisfaction clause 1) "requires satisfaction as to such matters as commercial value or quality, operative fitness, or mechanical utility, [and] dissatisfaction cannot be claimed unreasonably [because courts apply] . . . an objective standard"; and 2) "relates to matters involving fancy, personal taste, or judgment, [and] . . . a subjective standard is applied[.]" 78 Ohio App. 3d at 181 (internal citation omitted).

The court in *Hutton* noted that solely when examining the second of the two satisfaction clauses do "courts impose the limitation that the obligor act in good faith." *Id.* This is so because of the capacity for abuse where a contract's completion depends on subjective factors. *Id.* Where the first of the two satisfaction clauses exists, however, the court may assess whether a party completed performance such that the other party should have been "satisfied" without the judicial imposition of good faith. *Id.*

The court in *Hutton* examined a satisfaction clause allowing a party to avoid performance if he was unable to "obtain financing suitable to him." *Id.* at 178. The court held that such a satisfaction clause was subject to an objective standard of commercial reasonableness, because "an objective standard governs satisfaction clauses in contracts which involve commercial or financial matters." *Id.* at 186.

Similarly, here the satisfaction clause depended on Younglove's completion of a commercial project, and I find that an objective standard of reasonableness applies. In so holding, I also find no independent duty of good faith existed that PSD could breach.

## 2. Fiduciary Relationship

Second, Younglove claims: "PSD Development assumed a special, fiduciary relationship with Younglove to promptly pay Younglove for labor and materials supplied to the Project, and PSD Development knew that if it failed to promptly reimburse Younglove for labor and materials that Younglove provided to the Project that Younglove would experience undue and unnecessary hardship." [Doc. 69, at 8].

PSD responds that no such fiduciary relationship existed between the two parties: "[F]iduciary duties are not created in commercial business relationships where, as here, the parties dealt with each other at arm's length, each acting to protect its own interests, with neither having any reasonable expectation that the other would be acting solely or primarily on its behalf." [Doc. 105, at 5].

A "fiduciary relationship" is one "in which special confidence and trust is reposed in the integrity and fidelity of another and there is a resulting position of superiority or influence, acquired by virtue of this special trust." *In re Termination of Employment of Pratt*, 40 Ohio St. 2d 107, 115

(1974). "The relationship of debtor and creditor without more is not a fiduciary relationship. A fiduciary relationship may be created out of an informal relationship, but this is done only when both parties understand that a special trust or confidence has been reposed." *Umbaugh Pole Bldg. Co. v. Scott* (*Umbaugh*), 58 Ohio St. 2d 282, 282 (1979).

In *Ed Schory & Sons, Inc. v. Society National Bank*, 75 Ohio St. 3d 433, 443 (1996), the Ohio Supreme Court characterized *Umbaugh* as "a commercial context in which the parties deal at arm's length, each protecting his or her respective interests," and as holding that such a context and such interaction "is insufficient to create a fiduciary relationship."

The court in *Ed Schory & Sons* then held that no such relationship existed between the parties in that case, because "Francis has failed to demonstrate that Society was not acting solely in its own interest. In fact, the record indicates that Society, at all times, acted to protect its own interest, and 'neither party had, nor could have had, a reasonable expectation that the creditor [Society] would act solely or primarily on behalf of the debtor [Francis].'" *Id.* (citing *Umbaugh*, *supra*, 58 Ohio St. 2d at 287); *see also Shaver v. Std. Oil. Co.*, 135 Ohio App. 3d 242, 245 (1999) ("A contractual relationship alone does not automatically create a fiduciary duty."); *RPM, Inc. v. Oatey Co.*, 2005 WL 663057, *4 (Ohio Ct. App.) ("Ordinarily, in business transactions where the parties deal at arm's length, no fiduciary relationship exists.").

Moreover, "this fiduciary relationship cannot be unilateral." *Applegate v. Fund for Constitutional Gov't*, 70 Ohio App. 3d 813, 817 (1990). "A party's allegation that he reposed a special trust or confidence in [another] is insufficient as a matter of law to prove the existence of a fiduciary relationship without evidence that both parties understood that a fiduciary relationship existed." *Lee v. Cuyahoga Cty. Court of Common Pleas*, 76 Ohio App. 3d 620, 623 (1991).

9

Here, as in *Ed Schory & Sons* and the other cases cited, Younglove does not allege facts demonstrating that the parties did not "deal at arm's length, each protecting [its] respective interests." *Ed Schory & Sons*, *supra*, 75 Ohio St. 3d at 443. Younglove further fails to allege that "both parties understood that a fiduciary relationship existed." *Lee*, *supra*, 76 Ohio App. 3d at 623. Younglove and PSD's commercial relationship is not of the sort that Ohio law views as a fiduciary relationship, notwithstanding Younglove's allegations that it assumed some "responsibilities [vis-a-vis PSD] that were specifically NOT part of the contract[.]" [Doc. 122, at 8].

Even taking as true Younglove's allegations in its complaint, therefore, Younglove has failed to demonstrate a fiduciary relationship existed between it and PSD.

Younglove thus cannot maintain a distinct claim for breach of the duty of good faith and fair dealing (in contract), and I grant PSD's motion to dismiss this claim.

### III. Breach of the Duty of Good Faith and Fair Dealing (in Tort)

Younglove asserts also a breach of the duty of good faith and fair dealing claim in *tort*, which largely mirrors its contract claim on the same basis. The only difference – aside from some rewording and an expanded description of the facts – is Younglove's inclusion of a conclusory paragraph stating: "Further, PSD Development's breaches of its duty of good faith and of the special relationship were willful, wanton, malicious, and done in substantial disregard of the rights of Younglove with respect to the Project to warrant imposition of punitive damages and attorney's fees." [Doc. 69, at 12 ¶ 70].

As I described in the prior breach of the duty of good faith section, see Part II, *supra*, Younglove cannot maintain a distinct claim for breach of the duty of good faith and has not adequately alleged a fiduciary relationship between the two parties.

Also, as I described in dismissing Younglove's unjust enrichment claim, see Part I, *supra*, Younglove's allegations all fall under the rubric of its contract with PSD and emanate from its breach of contract claim. This is still true notwithstanding its inadequate and summary allegations – without more – of PSD's "willful, wanton, [and] malicious" actions:

> [A] cause of action cannot be classified as a tort action simply because the appellant used the term "fraudulently" in her pleading. Moreover, the Ohio Supreme Court has held that the addition of the adverbs "intentionally" and "willfully" do not change the nature of the cause of action; they only tend to emphasize that the action was done "in utter disregard of the rights of the defendants in error and with an evil and wicked purpose."

*Schwartz v. Bank One, Portsmouth*, 84 Ohio App. 3d 806, 810 (1992) (quoting *Ketcham v. Miller*, 104 Ohio St. 372, 377 (1922)).

Instead, a court looks to the alleged duty breached: "Where the duty allegedly breached by the defendant is one that arises out of a contract, independent of any duty imposed by law, the cause of action is one of contract." *Id.*

That is the case here,[2] and Ohio courts have held that "[i]t is not a tort to breach a contract, no matter how willful or malicious the breach." *Salvation Army v. Blue Cross & Blue Shield of N. Ohio*, 92 Ohio App. 3d 571, 578 (1993); *see also Svete v. Wunderlich*, 2008 WL 4425509, *7 (Ohio Ct. App.) (same).

Ohio, furthermore, does not recognize a claim of breach of the duty of good faith in tort. *E.g.*, *Ohio Coll. of Massotherapy v. Burek*, 144 Ohio App. 3d 196, 204 (2001) ("In addition and as noted

---

[2] Although Younglove attempts to point to its "special relationship" with PSD to demonstrate said duty, I have already found that Younglove has not adequately pled such a relationship. *See* Part II, *supra*.

Younglove thus cannot point to any independent duty for its claim, and can only found such a claim on its contractual relationship with PSD.

11

by the trial court, appellants' claim for breach of the duty of good faith also fails as a matter of law. There is no separate tort cause of action for breach of good faith that is separate from a breach of contract claim." (internal citation omitted)); *Lakota*, *supra*, 108 Ohio App. 3d at 645-46 (dismissing as a matter of law a cause of action for breach of good faith because "it appear[ed] that [the] cause of action was rooted in tort"); *Brandenburger v. Hilti, Inc.*, 52 Ohio App. 3d 21, 26 (1989) ("[A] tort cause of action for breach of good faith exists only in the context of an insurance contract.").

For these reasons, Younglove cannot maintain a distinct claim for breach of the duty of good faith and fair dealing (in tort), and I grant PSD's motion to dismiss this claim.

### IV. Conversion

Younglove accuses PSD of conversion:

> Younglove has provided substantial amounts of building materials, equipment, fixtures, and other property to PSD Development that Younglove has paid for and which Younglove rightfully owns, and for which PSD Development has not paid and has given every indication it has no intention of paying for, and does not rightfully own or have a legal right to possess or use.
> PSD Development is now, and has since 2007 been exercising dominion and control over Younglove's property, without Younglove's consent or permission, and without legal right to do so[.]

[Doc. 69, at 12 ¶¶ 72-73].

PSD responds that, again, Younglove dresses up its breach of contract claim in the clothing of another claim – this time that of conversion.

Conversion is "a wrongful exercise of dominion over property in exclusion of the right of the owner, or withholding it from his possession under a claim inconsistent with his rights." *Zacchini v. Scripps-Howard Broad. Co.*, 47 Ohio St. 2d 224, 226 (1976), *overruled on other grounds*, 433 U.S. 562, 578 (1977).

12

To prove conversion, a plaintiff must show: "(1) plaintiff's ownership or right to possession of the property at the time of the conversion; (2) defendant's conversion by a wrongful act or disposition of plaintiff's property rights; and (3) damages." *Haul Transp. of VA, Inc. v. Morgan*, 1995 WL 328995, *3 (Ohio Ct. App.).

Here, however, Younglove states that it voluntarily ceded possession of the property to PSD, and claims conversion only on PSD's failure to pay. Under Ohio law, "if one rightfully secured possession of the property of another he could not be held to have converted it, or to wrongfully possess it, until he failed to restore it upon demand, or by some act or circumstance of his own creation he knowingly and unlawfully exercised dominion over it." *Fid. & Deposit Co. of Md. v. Farmers & Citizens Bank of Lancaster* (*Farmers*), 72 Ohio App. 432, 433 (1943).

To make such a showing, "the owner must demonstrate (1) he or she demanded return of the property from the possessor after the possessor exercised dominion or control over the property, and (2) that the possessor refused to deliver the property to its rightful owner." *Tabar v. Charlie's Towing Serv., Inc.*, 97 Ohio App. 3d 423, 427-28 (1994).

In *McCamon-Hunt Insurance Agency v. Medical Mutual of Ohio*, 2008 WL 4444631, *1 (Ohio Ct. App.), an insurance agency sued an insurance provider for which the agency had secured a contract, alleging, *inter alia*, breach of a contract between the two and conversion for failure to pay the agency various commissions stemming from the original contract.

Dismissing the insurance agency's conversion claim, the court held:

[T]he only reason why [the agency] is alleging that [the provider] is exercising dominion over [the agency]'s property is that [the provider] is not paying [the agency] the commissions which [the agency] believes [the provider] is contractually obligated to pay [the agency]. Thus, [the agency]'s conversion claim is really a breach of contract claim.

13

*Id.*, \*5; *see also Frisbie Co. v. City of E. Cleveland*, 98 Ohio St. 266, 277 (1918) ("[M]ere breach of a contract, even though it results in the loss of specific property, does not constitute conversion.").

Similarly, Younglove's conversion claim essentially seeks damages for PSD's failure to pay the balance due under the contract, as the materials in question encompassed part of that contract and project. Younglove thus cannot transform its breach of contract claim to one for conversion. *Id.*

Moreover, Younglove has failed to allege adequately that: 1) PSD's withholding of payment was wrongful, because it was founded in PSD's belief that Younglove breached the contract, *Frisbie Co.*, *supra*, 98 Ohio St. at 277; *Morgan*, *supra*, 1995 WL 328995, \*3; and  2) it demanded PSD complete payment before Younglove filed this suit, *Tabar*, *supra*, 97 Ohio App. 3d at 427-28; *Farmers*, *supra*, 72 Ohio App. at 433.

Younglove thus cannot maintain a claim for conversion, and I grant PSD's motion to dismiss this claim.

## V. Declaratory Judgment

Younglove requests that I grant it declaratory judgment on PSD's breach of warranty affirmative defense/counterclaim. PSD responds that declaratory judgment is inappropriate as to an affirmative defense or counterclaim that would resolve only a subset of issues in the case.

Under the Declaratory Judgment Act (Act), 28 U.S.C. § 2201, federal district courts may issue declaratory judgments in certain circumstances. The Supreme Court has held that the Act confers jurisdiction to hear a declaratory judgment claim where "the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007) (internal quotation omitted).

The Court then noted that "a litigant may not use a declaratory-judgment action to obtain piecemeal adjudication of defenses that *would not finally and conclusively resolve* the underlying controversy." *Id.* at 127 n.7 (citing *Calderon v. Ashmus*, 523 U.S. 740, 749 (1998)).

This is precisely the case here, where Younglove seeks "piecemeal adjudication of defenses that *would not finally and conclusively resolve* the underlying controversy." *Id.* Even were I to grant Younglove declaratory judgment on PSD's breach of warranty claim, there remains the possibility that PSD could succeed on its more fundamental breach of contract defense/counterclaim – as well as Younglove's breach of contract and mechanic's lien claims. Resolution of the breach of warranty defense/claim thus would not resolve the underlying controversy, and I decline to allow such a declaratory judgment claim.

Application of the factors the Sixth Circuit has articulated – for when a claim for declaratory judgment is proper – confirms this conclusion. The court in *Grand Truck Western R.R. v. Consolidated Rail Co.*, 746 F.2d 323, 326 (6th Cir. 1984), held that a district court should apply certain factors in determining whether a declaratory judgment claim is appropriate:

(1) whether the declaratory action would settle the controversy;

(2) whether the declaratory action would serve a useful purpose in clarifying the legal relations in issue;

(3) whether the declaratory remedy is being used merely for the purpose of "procedural fencing" or "to provide an arena for res judicata;"

(4) whether the use of a declaratory action would increase friction between our federal and state courts and improperly encroach upon state jurisdiction; and

(5) whether there is an alternative remedy is better or more effective.

Here, as articulated above, the first factor weighs heavily against allowing Younglove's declaratory judgment claim to proceed. *Id.*

15

The second factor, meanwhile, weighs very slightly in favor of Younglove, as the discrete legal issues of the second claim – which will not settle the controversy – could be clarified or resolved. As I may – and must – make this determination in the course of the continuing litigation in any case, however, this "advantage" is virtually nonexistent. *Id.*; *see also Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 556-57 (6th Cir. 2008).

The third factor is inapplicable and does not affect my balancing, because here there exists no "race for race for *res judicata*" that typically exists where two parties seek alternative state and federal determinations of an issue. *Scottsdale Ins.*, *supra*, 513 F.3d at 558.

The fourth factor is inapplicable and does not affect my balancing. *Id.* at 559-61.

The fifth factor, finally, weighs against Younglove, as "there is an alternative remedy [that may] . . . more effective[ly]" resolve this issue: allowing the parties to address PSD's breach of warranty defense/counterclaim in the normal course of this litigation. *Grand Truck W. R.R.*, *supra*, 746 F.2d at 326.

For these reasons, I find that I may not permit Younglove's declaratory judgment claim under the rationale of *MedImmune*, *supra*, 549 U.S. at 127 n.7, and that in any case I should not having determined the factors of *Grand Truck Western R.R.*, *supra*, 746 F.2d at 326, weigh heavily against permitting Younglove's claim on this issue.

### Conclusion

For the foregoing reasons, it is hereby:

ORDERED THAT defendant PSD's motion to dismiss [Doc. 105] be, and the same hereby is, granted.

So ordered.

                 <u>s/James G. Carr</u>
                 U.S. District Judge