IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

Younglove Construction, LLC,  Case No. 3:08CV1447

    Plaintiff

    v.  ORDER

PSD Development, LLC, et al.,

    Defendants

This suit arises out of a "design/build" construction contract. Defendant PSD Development, LLC (PSD) contracted with plaintiff Younglove Construction, LLC (Younglove) to build an animal feed manufacturing plant. Younglove filed a complaint against PSD alleging breach of contract, unjust enrichment and foreclosure of its mechanics lien in response to PSD's failure to pay the balance due on the contract. PSD counterclaimed, alleging, *inter alia*, that Younglove breached the contract's requirements for concrete strength and placement of concrete reinforcement.

Jurisdiction is proper under 28 U.S.C. § 1332.

Pending is Younglove's motion to exclude certain testimony and opinions of PSD's expert F. Thomas Johnston. [Doc. 266]. For the following reasons, this motion is denied.

**Background**

In April 2006, Younglove entered into a contract with PSD. Under this contract, Younglove agreed to design and construct an animal feed manufacturing plant for PSD.

Beginning in late 2006, disputes arose between Younglove and PSD about the quality of the materials and work. PSD retained engineering expert F. Thomas Johnston in late 2007.

In early 2008, Younglove filed a mechanic's lien against the project. Younglove sued PSD for the balance of payments due on the contract. PSD countersued for breach of contract and breach of warranty.

Mr. Johnston conducted an investigation of the design and construction of the feed manufacturing plant. In his initial report in 2009, Johnston assumed, without checking, that the steel reinforcement (rebar) was correctly placed.

In August, 2009, Younglove hired a third party company to take additional concrete samples and use an echo radar device on the concrete walls. The results of these tests showed rebar placements that, according to PSD, fail to meet contractual requirements.

In September or October, 2009, PSD hired a specialist in ground penetration radar, Nate Kollar, to conduct a series of surveys to determine the location and depth of the rebar in the exterior and interior walls. Ground penetration radar surveys provide the type of data relied upon by experts in Mr. Johnston's field when performing investigations of reinforced concrete structures.

Mr. Kollar conducted surveys of the following areas of the concrete building:

- The interior face of the north basement wall between Column Lines 12 and 15.

- The interior face of the east basement wall between Column Lines D and E.

- The north and south sides of the 7" interior basement wall between Column Line 12 and the elevator shaft wall.

- An exterior area of the east wall between Column Lines E and F from grade to about 6' above grade.

- The exterior west wall of the lower area of Bins B1, B2, B3, B4, B5, B6, B9 and B11 from just above the top of the hopper to approximately 8' up, in the region of highest pressure.

- A randomly selected portion of the wall shared by Bins B11 and B22.

- A randomly selected portion of the wall shared by Bins L13 and L15.

- A randomly selected portion of the wall shared by Bins B14 and B25.

- The bottom 10' of the wall shared by Bins B17 and B18, in the region of highest pressure.

- The bottom 10' of the wall shared by Bins B17 and B16, in the region of highest pressure.

- The bottom 10' of the wall shared by Bins B30 and U6, in the region of highest pressure.

Mr. Kollar marked the locations and recorded the depth of the concrete cover of the rebar in the surveyed areas of the walls where possible. His ground penetrating radar equipment could not, due to the thickness of some segments of the structure, penetrate far enough to generate data on rebar placement as to those locations.

Every area surveyed had horizontal reinforcement with highly varying concrete covers and spacing. Many of the horizontal bars were not level, but sloped up or down.

Based on the consistency of the survey results and testimony by Younglove employees who observed firsthand the construction process, Mr. Johnson believes that the surveys represent the typical placement of horizontal reinforcement by Younglove throughout the slip-formed portion of the feed mill plant.

Mr. Johnston concluded that the inaccurate spacing and the highly variable concrete covers weaken the bin walls. He recommends tearing out and replacing 4,440 square feet of bin wall contained within eight different bins. The estimated cost of these recommended repairs is about $1.9 million.

The recommended repairs affect eight bins. Ground penetrating radar information exists for three of these bins.

Younglove seeks to exclude testimony and opinions of Mr. Johnston regarding the necessity of removing and replacing interior bin walls that he has not inspected and ground penetrating radar as not surveyed.

## Standard of Review

Federal Rule of Evidence 702 governs expert testimony. Expert testimony is appropriate where "scientific, technical, or other specialized knowledge will assist the trier of fact." Fed. R. Evid. 702. To be admissible under Federal Rule of Evidence 702, expert testimony must be based upon "sufficient facts or data" and must be "the product of reliable principles and methods." *Id.*

An expert's opinion must be "more than subjective belief or unsupported speculation." *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 589 (1993). "No matter how good experts' credentials may be, they are not permitted to speculate." *Tamraz v. Lincoln Elec. Co.*, 620 F.3d 665, 671 (6th Cir. 2010) (quoting *Goebel v. Denver & Rio Grande W. R.R. Co.*, 215 F.3d 1083, 1088 (10th Cir. 2000)).

In rulings on the admissibility of expert opinion evidence, the trial court has broad discretion. *See Tamraz*, *supra*, 620 F.3d at 672 ("[W]here one person sees speculation, we acknowledge, another may see knowledge, which is why the district court enjoys broad discretion over where to draw the line.").

Rule 702 represents a liberal approach to determining the admissibility of expert opinions. *Daubert*, *supra*, 509 U.S. at 597 (emphasizing the "liberal thrust" of the Federal Rules and their "general approach of relaxing the traditional barriers to 'opinion' testimony"). My role as gatekeeper

"is not intended to serve as a replacement for the adversary system: '[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence.'" *U.S. v. 14.38 Acres of Land*, 80 F.3d 1074, 1078 (5th Cir. 1996) (quoting *Daubert*, *supra*, 509 U.S. at 597).

## Discussion

Younglove objects to Mr. Johnston's testimony and opinion regarding the necessity of replacing 4,440 square feet of interior bin walls. Younglove argues that because Mr. Johnston has not inspected or surveyed each of the bin walls, his opinion is speculative. Younglove points out that PSD enjoys full access to the feed mill plant

PSD argues that the random sampling methodology was appropriate, and that the consistency of the results and the testimony of Younglove's employees suffice fully to support Mr. Johnston's opinion.

Younglove is correct that Mr. Johnston cannot, on this evidence, present an opinion with absolute certainty. But Rule 702 "does not require anything approaching absolute certainty." *Tamraz*, *supra*, 620 F.3d at 671. Though Johnston tested only a small segment and his opinion covers a far greater area, most of which he did not test, his results were uniform and consistent. Most importantly, they confirm eyewitness evidence that Younglove, when placing rebar, ignored its contractual obligations. Mr. Johnston's opinion is amply supported and not "unsupported speculation."

Younglove's challenges go to weight, not admissibility. "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional

5

and appropriate means of attacking shaky but admissible evidence." *Daubert*, *supra*, 509 U.S. at 596.

In view of the other evidence about misplacement of rebar and the uniform results of all the tests Johnson conducted, I am satisfied that his opinion has a reliable basis.

## Conclusion

For the foregoing reasons, it is hereby:

ORDERED THAT Younglove's motion to exclude certain testimony of F. Thomas Johnston [Doc. 266] be, and hereby is denied.

So ordered.

<u>/s/James G. Carr</u>
U.S. District Judge